PAUL ADAMS COAL CO., APPELLEE, *v.* MAMONE, CHIEF, APPELLANT.

(No. 558 — Decided March 28, 1988.)

*Mart T. Mustick,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Linda M. Battisti,* for appellant.

ABELE, J. This is an appeal pursuant to R.C. 1513.14 from a Reclamation Board of Review decision, dated March 25, 1987, vacating Notice of Violation 14177. Interestingly, the land in question is covered by both a coal mining permit issued under R.C.

Chapter 1513 and an industrial mineral mining permit issued under R.C. Chapter 1514.

Paul Adams Coal Co. ("Paul Adams") obtained coal mining permit C-1337 in July 1980, and mined coal from pits No. 5 and No. 6 until April 1983. The permit, though expired, is still considered "active" because the area has not been reclaimed and bonds issued in support of the permit have not been released.

Paul Adams obtained industrial mineral mining permit IM-905 in May 1985, and removed clay from pit No. 5 prior to November 1985. On August 13, 1986, a bulldozer opened a window in pit No. 5 and acid water subsequently drained from pit No. 5 into pond No. 001. On August 28, 1986, the Division of Reclamation issued IM NOV 4499 for an industrial mineral mining permit violation involving the accumulation of acid water in pit No. 5, in violation of R.C. 1514.02(A) and Ohio Adm. Code 1501:14-3-02. On October 24, 1986, the Division of Reclamation issued NOV 14177 for a coal mining permit violation involving the discharge of acid water from pond No. 001 in violation of R.C. 1513.16(A)(10)(a)(ii) and Ohio Adm. Code 1501:13-2-10(D).

The hearing officer found the acid water which entered pond No. 001 emanated from the pit No. 5 area. The hearing officer concluded NOV 14177 described a violation which occurred with regard to the industrial mineral mining permit, rather than with regard to the coal mining permit. She wrote:

"* * * Normally, the mere fact that acid water is discharging from a permit area would be sufficient to support a NOV with no inquiry into the *source* of that acid water. In this matter, however, I believe that an effort must be made to trace the acid water back to *either* the industrial minerals operation *or* the coal operation.

"* * *

"* * * Then, based upon that determination, the Division must elect to issue a NOV either on the IM permit or on the coal permit. The failure to make such an election could have the incongruous result of duplicative violations being issued on each permit." (Emphasis *sic*.)

The hearing officer further noted that while both R.C. Chapters 1513 and 1514 warn against acid water accumulation and discharge, NOVs received pursuant to R.C. Chapter 1513 may involve civil penalty assessments.

The Reclamation Board of Review adopted the findings, conclusions, and recommendation of the hearing officer, and vacated NOV 14177. We reverse.

### Assignment of Error I

"Because water which passes over an area disturbed by coal mining operations, as defined in O.A.C. 1501:13-2-10(D), must meet that provision's effluent limitation, regardless of it's [*sic*] source, it was error for the board to vacate NOV 14177 since the issuance of a permit to mine industrial mineral in addition to coal does not relieve the operator from the obligation to comply with coal mining regulations."

### Assignment of Error II

"Because statutes should be construed harmoniously, nothing in R.C. Section 1514 exempts Paul Adams from complying with R.C. Section 1513 [*sic*]."

Appellant contends that because appellee clearly violated R.C. 1513.16 (A)(10)(a)(ii) and Ohio Adm. Code 1501:13-2-10(D), the board should not have vacated NOV 14177. We agree. We note appellee does not contest the fact the violation existed.

We find no merit to appellee's

176

arguments that the fact the Division of Reclamation issued IM NOV 4499 in August 1986 precludes issuance of NOV 14177 two months later. We note that while IM NOV 4499 cited appellee for the accumulation of acid water in pit No. 5, NOV 14177 cited appellee for the *discharge* of acid water from pond No. 001.

We also find no merit to appellee's arguments that since the acid water most likely resulted from the industrial mineral mining rather than from the coal mining, appellee may not be cited for a coal mining violation. Neither appellee nor the hearing officer cited any authority to support such an argument. In *United States* v. *Batchelder* (1979), 442 U.S. 114, 123-124, the court wrote:

"This court has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants."

See, also, *State* v. *Tipka* (1984), 12 Ohio St. 3d 258, 12 OBR 337, 466 N.E. 2d 898; *State* v. *Oliver* (1987), 31 Ohio App. 3d 100, 31 OBR 171, 508 N.E. 2d 1048; *State* v. *Miles* (1983), 8 Ohio App. 3d 410, 8 OBR 533, 457 N.E. 2d 944.

We sustain appellant's first and second assignments of error, and the decision of the Reclamation Board of Review is reversed.

*Decision reversed.*

STEPHENSON, J., concurs.

GREY, P.J., dissents.

STEPHENSON, J., concurring. I concur in the judgment and opinion reversing the decision of the Reclamation Board of Review but would add the following. R.C. 1513.14(A) provides, in pertinent part, as follows:

"The court shall affirm the decision of the board unless the court determines that it is arbitrary, capricious, or otherwise inconsistent with law, in which case the court shall vacate the decision and remand to the board for such further proceedings as it may direct."

Initially, I would agree, as even the dissent herein acknowledges, that an area covered by two distinct permits may, under the proper circumstances, lead to two separate violations. In her February 20, 1987 Report and Recommendation, the Reclamation Board of Review hearing officer stated, in pertinent part, as follows:

"Normally, the mere fact that acid water is discharging from a permit area would be sufficient to support a NOV with no inquiry into the *source* of that acid water. In this matter, however, I believe that an effort must be made to trace the acid water back to *either* the industrial minerals operation *or* the coal operation. Such an examination into the source of the acid water is pertinent because this area is covered by two separate permits, issued pursuant to different Chapters of Ohio law and regulated by distinct sets of rules.

"* * *

"The evidence presented by Mr. Adams persuaded me that the acid drainage entering pond #001 was most likely coming from the #5 clay pit, rather that [*sic*] the #6 coal pits. It appears that *some of the toxic materials surrounding the #5 clay pit resulted from the original coal operation, and that acid water problems had occurred prior to the clay affectment.* However, I find that since this particular area had been reaffected by the IM operation, the reclamation responsibilities were shifted from permit C-1337 to permit IM-905.

"* * *

"This case is unique in that it deals with a violation which occurred on an

area covered simultaneously by an IM and a coal permit. I believe that the Division must determine the source of the deleterious water. Then, based upon that determination, the Division must elect to issue a NOV either on the IM permit or on the coal permit. The failure to make such an election could have the incongruous result of duplicative violations being issued on each permit.

"The burden of proof is shouldered by the Division in this matter. Based upon the evidence presented, I have made the factual finding that the acid water which entered sediment pond #001 emanated from the area of the #5 pit and was generated by the IM operation." (Emphasis added in part.)

Although, as the dissent herein notes, the hearing officer made the "factual finding" that the acid water discharge was from the No. 5 clay pit and was not generated by the coal mining operation, such quoted conclusion came only after the hearing officer's erroneous conclusion that when land is covered by two different permits, there can be only "one source" for the purpose of the issuance of notices of violation. Manifestly, acid water discharge on land covered by both industrial mining and coal mining permits could be engendered by both mining operations.

Furthermore, the hearing officer had already specified in her report that some of the toxic materials surrounding the No. 5 clay pit "resulted from the * * * coal operation," but then held that the mere reaffectment of the permit area by industrial mining automatically shifted "reclamation responsibilities," apparently in furtherance of the officer's erroneous search for *one* source. For the foregoing reasons, I believe that the decision of the board was arbitrary, capricious, and inconsistent with law and, hence, I concur in the reversal.

GREY, P.J. dissenting. I respectfully dissent.

The majority analogizes to criminal law and holds that one act may constitute a violation of two separate and distinct statutes. One could just as easily analogize to R.C. 2941.25, the crimes-of-similar-import statute, or *State* v. *Roberts* (1980), 62 Ohio St. 2d 170, 16 O.O. 3d 201, 405 N.E. 2d 247. I agree with the majority that one act can constitute a violation of two statutes, but the issue here is whether or not there were, as a matter of fact, two violations.

The board of review found that there was only one violation, only one source of deleterious water. The hearing officer found as follows:

"The burden of proof is shouldered by the Division in this matter. Based upon the evidence presented, I have made the *factual finding* that the acid water which entered sediment pond #001 emanated from the area of the #5 pit and was generated by the IM operation.

"NOV 14177 was issued pursuant to O.R.C. 1513.02. This section provides that NOVs may be issued to a permittee where violations occur on a *coal mining permit* area. As I can not find that the acid water was generated by the coal mining operation, I do not believe that the NOV was properly issued under Chapter 1513. Therefore, I find that the issuance of NOV 14177 was arbitrary, capricious or otherwise inconsistent with law. O.R.C. 1513.13 (B)."

The chief charged two violations, but based on the facts was only able to prove one. The Reclamation Board of Review is not a rubber stamp for the Division of Reclamation. It has a statutory mandate to make an independent evaluation of the facts in each case, R.C. 1513.13(A)(1) and (B), and determine whether the NOV is ar-

178

bitrary and capricious. In this case, appellee had a clay permit which was the source of the violation and the board found there was a violation. This would be a violation, whether there was a coal permit on the same land or not. If there is a coal permit, does this create a second violation? And would a third permit for some other purpose mean three violations? I think not. This kind of thinking was rejected in *State* v. *Fisher* (1977), 52 Ohio App. 2d 133, 6 O.O. 3d 99, 368 N.E. 2d 324.

In *Fisher,* the defendant was using an illegal gill net and caught walleye, carp, bass, catfish, longnosed gar, sauger, steelhead and quillback suckers. The Division of Wildlife filed eight separate charges, but the Court of Appeals for the Sixth District said this was impermissible. I believe the board of review found the facts to be, just as in *Fisher,* one offense. That finding is amply supported by the record. I would not disturb it. Thus, I dissent.